UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WILLIAM LITTLE,

               Plaintiff,                      Case No. 1:21-cv-11104

v.                                       Honorable Thomas L. Ludington
                                           United States District Judge
CITY OF SAGINAW, STEVEN LAUTNER,
and JORDAN LADOUCE,

               Defendants.

_____/

**OPINION AND ORDER DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, DECLARING THAT DEFENDANTS VIOLATED
PLAINTIFF'S CONSTITUTIONAL RIGHTS, GRANTING LEAVE TO FILE MOTIONS
FOR SUMMARY JUDGMENT ON PLAINTIFF'S FOUR REMAINING CLAIMS, AND
ADJOURNING SCHEDULING ORDER**

       This case concerns an alleged Fourth Amendment violation by two Saginaw City police

officers who entered a man's apartment without a warrant and arrested him after tracking footprints

in the snow at night allegedly leading to his doorstep.

       In January 2020, one person called the Saginaw County 911 dispatch and reported a black

man wearing a tan coat breaking a window at a law firm and walking toward a medical building.

A second caller reported a broken window at the medical building. From there, the officers

followed footprints in the dark until they arrived at the front door of David Little—a white man

with a gray coat—entered his apartment, and then arrested him for malicious destruction of

property. Little spent five days in jail. The charges were dismissed 15 months later. In May 2021,

Little sued the two officers and the City of Saginaw for Fourth Amendment violations, malicious

prosecution, and three state-law claims. Defendants assert the entry and arrest were lawful based

on Little's consent and "eyeballing" his shoes.

As explained hereafter, the officers' warrantless entry was unlawful, they lacked probable cause to arrest Little, and the City of Saginaw is responsible for the Chief of Police's policy for establishing probable cause or an exception to the warrant requirement and for failing to train the officers on determining probable cause or an exception to the warrant requirement.

## I.

On January 5, 2020, Defendants Steven Lautner and Jordan LaDouce, both City of Saginaw police officers, were dispatched to investigate two complaints of malicious destruction of property: a "black male in a tan coat" breaking a window at Central Michigan University and then fleeing toward a law firm where another window was reported broken. *See* ECF Nos. 26 at PageID.100; 26-4 at PageID.203–04, 208.

As noted above, Defendants say they followed "four blocks" of footprints in the snow at night from the medical building to Plaintiff David Little's apartment. *See* ECF Nos. 26-4 at PageID.211, 232–34; 29-5 at PageID.408. Defendants assert Plaintiff allowed them into his apartment, after which they matched his shoes to the footprints that began at the law firm, creating probable cause to arrest him for malicious destruction of property. ECF No. 26 at PageID.100.

By contrast, Plaintiff claims that he was sleeping when Defendants knocked on his door and entered without a warrant, arrested him without probable cause, and unlawfully seized his shoes. ECF No. 29 at PageID.297–99. As Plaintiff put it, they only relied on "eyeballing" the footprints and did not have any other evidence linking him to the crime. *Id.* at PageID.296. Plaintiff was in jail for five days before he was released on bond. ECF No. 29-6 at PageID.443–47.

The officers' body cameras reflect all the relevant activity from the knocking at Plaintiff's door to the cuffing of his wrists. *See generally* Pl.'s Resp. Ex. 11, ECF No. 29 [hereinafter "Lautner Cam"]; Pl.'s Resp. Ex. 12, ECF No. 29 [hereinafter "LaDouce Cam"].

- 2 -

Plaintiff brought the following eight claims in May 2021:

(1) Count I: Unlawful Entry under 42 U.S.C. § 1983;
(2) Count I: Unlawful Seizure under 42 U.S.C. § 1983;
(3) Count II: Unlawful Arrest under 42 U.S.C. § 1983;
(4) Count II: Malicious Prosecution under 42 U.S.C. § 1983;
(5) Count III: Unlawful Imprisonment under Michigan law;
(6) Count III: Assault and Battery under Michigan law;
(7) Count III: Intentional Infliction of Emotional Distress under Michigan law; and
(8) Count IV: Municipal Liability under 42 U.S.C. § 1983 against City of Saginaw.

ECF No. 1 at PageID.5–9.

Defendants seek summary judgment on the claims for Unlawful Entry, Unlawful Arrest, and Municipal Liability.[1] ECF No. 26. The Parties agree that Defendants followed four blocks of footprints in the snow and dark, stopped at and entered Plaintiff's apartment, and arrested him for destruction of property. However, they disagree on the existence of probable cause and the unlawfulness of the entry. Defendants argue Plaintiff permitted their entry, while Plaintiff contends they entered without his consent, wrongfully seized his shoes, and arrested him without seeking a warrant based on a hunch that did not amount to probable cause.

## II.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242,

---

[1] Plaintiff has since conceded his Assault and Battery claim. Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 29 at PageID.302 ("Plaintiff does not contest that summary judgment is proper relative to the claims of excessive force and assault and battery.").

250 (1986) (citation omitted). A genuine issue of fact requires more than "a mere scintilla of evidence," *id.* at 251, more than "some metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the nonmovant to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52; *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018); *see also* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 35–36 (2022) (explaining that courts should only draw "reasonable" inferences).

Summary judgment will be granted if the nonmovant fails to establish a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied if the challenged elements have "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). "The standard is the same [if] 'the parties present cross-motions.'" *MRP Props. v. United States*, 583 F. Supp. 3d 981, 990 (E.D. Mich. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## III.

First, Defendants contest Unlawful Entry. The Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant supported by probable cause. Arnold H. Loewy, *The Fourth Amendment as a Device for Protecting the Innocent*, 81 MICH. L. REV. 1229, 1229, 1248 (1983) (quoting U.S. CONST. amend IV). Yet the Fourth Amendment permits warrantless searches with valid consent. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010). "To be valid, the consent must be 'voluntary, unequivocal, specific,

intelligently given, and uncontaminated by duress or coercion.'" *United States v. Sheckles*, 996 F.3d 330, 346 (6th Cir.) (quoting *United States v. Alexander*, 954 F.3d 910, 918 (6th Cir. 2020)), *cert. denied*, 142 S. Ct. 717 (2021). The validity of consent is based on "the totality of all the circumstances," *Harris v. Klare*, 902 F.3d 630, 639 (6th Cir. 2018) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)), which the government must prove "by a preponderance of the evidence, through clear and positive testimony," *United States v. Blomquist*, 976 F.3d 755, 758 (6th Cir. 2020) (quoting *United States v. Alexander*, 954 F.3d 910, 918 (6th Cir. 2020)).

Defendants have not carried their burden. There is no dispute that they did not elect to seek a warrant to enter Plaintiff's apartment, and they do not explain why. Indeed, Defendants only argue that Plaintiff consented to the search based on his later deposition testimony that he "let them in." ECF No. 26 at PageID.105 (quoting ECF No. 26-2 at PageID.138). But that unclear testimony arguably suggests Plaintiff chose not to ask the officers to leave after they entered his apartment—and who would? Such "witness credibility is quintessentially a question of fact for the jury." *United States v. Jackson*, 918 F.3d 467, 479 (6th Cir. 2019) (citation omitted). But not here.

Valid consent is determined by reviewing the totality of the circumstances "[a]t that time"—not by considering *post hoc* statements. *United States v. Worley*, 193 F.3d 380, 383 (6th Cir. 1999); *e.g.*, *United States v. Cousin*, No. 1:09-CR-00089, 2010 WL 338087, at *4 (E.D. Tenn. Jan. 19, 2010) (holding that suspect's after-the-fact statement about giving consent was not relevant to whether consent was valid when allegedly given), *aff'd*, 448 F. App'x 593 (6th Cir. 2012); *accord Schneckloth*, 412 U.S. at 221; *see also Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (holding that the "objective legal reasonableness of the action" must be "assessed . . . at the time it was taken" (citations omitted)). Plus, Plaintiff has since consistently maintained that he did not give Defendants any consent. Compl., ECF No. 1 at PageID.4–6 ("Officer Lautner explicitly

lied in his report when he wrote that Mr. Little granted consent for the officer to enter."); *accord* Pl.'s Resp., ECF No. 29 at PageID.307; *see also* ECF No. 31 at PageID.527.

Lautner's body camera conclusively forecloses any claim of consent. As Lautner testified, one of the "two callers . . . described a black male in a tan coat." ECF No. 26-4 at PageID.208. During the investigation of the buildings, Lautner said to LaDouce, "Alright, let's go upstairs and make sure this cocksucker's not still in here," Lautner Cam, pt. 2, at 1:40–1:43, and then exclaimed that the suspects were "[f]ucking cocksuckers, man," *id.*, pt. 3, at 1:00–1:04. Later, in Plaintiff's doorway, Lautner asked Plaintiff if he knew anything about the broken windows, and Plaintiff responded that he had "been at [his] boyfriend's all day." *Id.*, pt. 4, at 0:50–1:02. Lautner then started approaching the doorway while asking, "Do you have some shoes that you may bein' wearin' outside that we tracked here to your door?" *Id.* at 1:02–1:07. Plaintiff groaned, activated a light, and then turned towards his shoes. *Id.* at 1:06–1:09. As soon as Plaintiff turned away, Lautner followed him into the studio apartment, followed by LaDouce. *Id.* at 1:08–1:10. And when Lautner began speaking, Plaintiff abruptly spun around with an apparent look of surprise that Defendants were inside his apartment. *Id.* at 1:10–1:13.

In sum, "there is zero indication that Plaintiff consented to the entry of his home," ECF No. 29 at PageID.307, because there is not even a reasonable argument that Plaintiff ever made a gesture that a reasonable officer could have interpreted as an invitation to enter the apartment. Consent must be knowing, voluntary, and intelligent. *Sheckles*, 996 F.3d at 346. And asking if someone has shoes inside their apartment falls far short of requesting permission to enter it; no reasonable person would interpret "Do you have some shoes?" as "May I come inside?" *See United States v. Drayton*, 536 U.S. 194, 201 (2002) (explaining that officers may "request consent to

search" if "they do not induce cooperation by coercive means" (citing *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991))). Here, the latter question did not follow.

True, "acts and gestures can suffice to show consent." *Harris v. Klare*, 902 F.3d 630, 639 (6th Cir. 2018) (citations omitted). And Defendants gave conflicting testimony about what, if anything, Plaintiff gestured. *Compare* LaDouce Dep. ECF No. 29-5 at PageID.411 (testifying that Plaintiff first "turned away" then "gestured inside but had left his door open" before "he turned and indicated to us some shoes that were inside of his living room"), *with* Lautner Dep. ECF No. 29-4 at PageID.379 (testifying that Plaintiff first "gestured like to come inside or like let us inside" before the officers "observed some shoes matching the impressions"). These conflicting accounts create a factual dispute that would *ordinarily* be resolved by the trier of fact.

But, as explained, Defendants' body cameras indisputably demonstrate that Plaintiff did not make any gestures. Groaning, leaving your door open, and retrieving something from your house are far from the "clear and positive" nonverbal conduct required to infer unrequested access. *See, e.g.*, *Drayton*, 536 U.S. at 199–200, 206 (concluding that the defendant consented when he "lift[ed] his hands about eight inches from his legs" after being asked, "Mind if I check you?"); *United States v. Williams*, 754 F.2d 672, 675 (6th Cir. 1985) (same when the defendant "assisted in the search by unlocking [his] suitcase"); *United States v. Chambers*, 646 F. App'x 445, 445–46, 448 (6th Cir. 2016) (mem.) (same when the defendant was asked for a pat down then "put his hands on the troopers' car"). At best, Plaintiff acquiesced once he realized Lautner was already inside—which is not consent. *Harris*, 902 F.3d at 639 (holding that the government must show "more than acquiescence to a claim of lawful authority" (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968))).

Moreover, drawing all reasonable inferences in Plaintiff's favor, the exchange occurred in a coercive circumstance. *Cf. United States v. Houston*, No. 1:17-CR-20172, 2017 WL 2954736, at *6 (E.D. Mich. July 11, 2017) (finding coercive circumstances where "the two Troopers stopped [Plaintiff] when he was alone at night, tailed him for a time, and eventually confronted him using a fl[ash]light"). "Thus, [Plaintiff]'s age, mental capacity, and personal idiosyncrasies are relevant." *United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998). Here, Plaintiff "received special education services." ECF No. 29 at PageID.294. And he "speaks with atypical prosody that lacks proper intonation." *Jimenez ex rel. D.S.J. v. Comm'r of Soc. Sec.*, No. 7:21-CV-02030, 2022 WL 4085953, at *7 (S.D.N.Y. Aug. 18, 2022), *R. & R. adopted*, 2022 WL 4087958 (S.D.N.Y. Sept. 6, 2022). *See generally* Lautner Cam, pt. 2; Hongwei Ding & Yang Zhang, *Speech Prosody in Mental Disorders*, 9 ANN. REV. LINGUISTICS 335 (2022). Because this police interaction raises a question about Plaintiff's voluntary consent to enter his home, his intonation makes his cognitive capabilities an apt inquiry that likely would have made Defendants "aware that [he] was a special education student." *See Fewless ex rel. Fewless v. Bd. of Educ. of Wayland Union Schs.*, 208 F. Supp. 2d 806, 809 (W.D. Mich. 2002); *Baker v. City of Trenton*, 936 F.3d 523, 530 (6th Cir. 2019) ("[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (alteration in original) (quoting *Payton v. New York*, 445 U.S. 573, 585 (1980))). As should have his lengthy and obvious difficulty understanding the *Miranda* warnings. *See* Lautner Cam, pt. 4, at 5:15–8:05 ("I don't know what I have a right to."). And Defendants had ample time to pause for an assessment given that the alleged crime was a nonviolent misdemeanor and presented no exigent circumstances. *Compare* Lautner Cam, pt. 4, at 4:38–4:45, *with* MICH. COMP. LAWS § 750.377a(1).

In sum, even drawing all reasonable inferences in Defendants' favor, no reasonable juror could conclude that this warrantless entry was lawful. *See* U.S. CONST. amend. IV.

Nor are Defendants entitled to qualified immunity from the Unlawful Entry claim, as "it was clearly established that warrantless entry into a home without an exception to the warrant requirement violated clearly established law." *Barton v. Martin*, 949 F.3d 938, 949 (6th Cir. 2020) (citing *Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006)); *see also* Lautner Cam, pt. 4, at 12:35–12:43 (statement of Defendant Lautner) (offering to lock Plaintiff's front door because "[i]t's very intrusive when you break into places").

## IV.

Defendants next contest Plaintiff's claim of Unlawful Arrest. When Plaintiff was arrested, it was clearly established that an arrest without probable cause violates the Fourth Amendment. *Rieves v. Town of Smyrna*, 959 F.3d 678, 696 (6th Cir. 2020); *see also Ouza v. City of Dearborn Heights*, 969 F.3d 265, 279 (6th Cir. 2020); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 584 (6th Cir. 2003); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001); *Niewolak v. Bartynsky*, No. 2:19-CV-13386, 2022 WL 2820088, at *6 (E.D. Mich. July 19, 2022) (collecting cases).

In order to rebut Defendants' entitlement to qualified immunity from an unlawful arrest, Plaintiff must next demonstrate that each of them was involved in his arrest and, based on the totality of the circumstances known then, lacked a reasonable belief of probable cause that he committed a crime. *Ouza*, 969 F.3d at 279 (citation omitted); *accord Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (citation omitted); *see also Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("The facts must be particularized to the arrestee."); *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (requiring that each defendant "*personally*" violated the arrestee's rights).

Thus the question is whether Defendants reasonably believed they had probable cause to arrest Plaintiff for "malicious destruction of property." ECF No. 26-4 at PageID.203.

Police officers have probable cause only if, at the time of arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the pe[rson] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). When establishing probable cause, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008) (citation omitted); *see also Illinois v. Gates*, 462 U.S. 213, 231 (1983) ("In dealing with probable cause, . . . we deal with probabilities." (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949))).

Here, the doctrine of "collective knowledge" commands that the foundation for probable cause be indistinguishable for Lautner and LaDouce because they exchanged findings before the joint search and arrest. ECF Nos. 29-4 at PageID.378; 29-5 at PageID.405; *United States v. Duval*, 742 F.3d 246, 253 (6th Cir. 2014) ("[T]he collective knowledge of agents working as a team is to be considered together in determining probable cause." (alteration in original) (citations omitted)).

Defendants did not have a reasonable semblance of probable cause that Plaintiff committed a crime. Under Michigan law, malicious destruction of property is when a person "willfully and maliciously destroys or injures the personal property of another person," MICH. COMP. LAWS 750.377a, which "may be inferred from all the facts and circumstances," *People v. Lugo*, 542 N.W.2d 921, 927 (Mich. Ct. App. 1995) (per curiam); *e.g.*, *People v. Nelson*, 594 N.W.2d 114, 117 (Mich. Ct. App. 1999) (inferring intent from evidence that "corroborated [an] account of the incident") (per curiam). Although Defendants inferred that Plaintiff was guilty because he owned

- 10 -

shoes that allegedly matched four blocks of footprints in the snow at night, as well as a bicycle

that paralleled part of the footprints, the evidence admits significant differences of fact.

Neither the shoes nor their purported match to the footprints could establish probable cause

because they came from an unlawful search. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)

("[W]e have consistently rejected[ ]that a search unlawful at its inception may be validated by

what it turns up." (citations omitted)); *accord United States v. Jenkins*, 396 F.3d 751, 758 (6th Cir.

2005) (collecting cases); *see also People v. Hammerlund*, 977 N.W.2d 148, 157 (Mich. Ct. App.

2021) ("[F]ruits of an illegal search or arrest should be suppressed [if] they bear a sufficiently close

relationship to the underlying illegality." (quoting *New York v. Harris*, 495 U.S. 14, 19 (1990))).

In addition, the shoes do not fit the prints:

(1) The heels of the shoes have an oval-shaped emblem that reads "Avia"; the heels of the footprints have a blank crescent-shaped emblem.
(2) The oval is surrounded by a starburst of ten short indentations; the crescent covers three shoe-wide vertical lines.
(3) The shoe soles are thick and straight, representing "traditional" or "support" soles used for working; the footprints are narrow and curved, representing "minimalist" or "barefoot" soles used for running.

*Compare* ECF No. 26-3 at PageID.165, *with id.* at PageID.170. Moreover, the shoes are wider than

the footprints. *See id.* at PageID.166; *see also Green v. Throckmorton*, 681 F.3d 853, 863 (6th Cir.

2012) (holding that postarrest evidence can create a genuine issue of material fact regarding what

officers say they observed at the time of an arrest). It has been said that "if it doesn't fit," then

"you must acquit." *Benton v. Booker*, 403 F. App'x 984, 986 (6th Cir. 2010); *accord People v.

Pettway*, No. 292170, 2010 WL 3604398, at *7 (Mich. Ct. App. Sept. 16, 2010) (per curiam) ("If

the [sho]es don't fit you must acquit.").

Because a brief pause and comparison would have revealed these errors, Defendants'

mistake of fact was unreasonable. *See Harris v. City of Saginaw*, 62 F.4th 1028, 1037 (6th Cir.

2023) ("So, a warrantless arrest is constitutionally unreasonable if the mistake of fact relied on to justify the arrest was unreasonable."). Despite saying, "I have a picture of this footprint of this shoe on my camera right now," Lautner Cam, pt. 4, at 4:19–4:24, Defendants never consulted the readily available picture before arresting Plaintiff. Instead, they unlawfully entered his apartment, shined a flashlight at his shoes across the room, and immediately placed him "under arrest." *Id.* at 1:10–5:15 ("There's the bike, yeah, those shoes right there, go ahead and put your hands behind your back."). After LaDouce went to get his patrol car, Plaintiff protested that he was "falsely being arrested," *id.* at 8:38–8:40, and Lautner replied, "I could be wrong. I've been wrong before," *id.* at 8:48–8:51. Yet a quick comparison of the photo they had in one hand to the shoes they had in the other would have revealed that Plaintiff was not the phantom offender. Why not corroborate the evidence before making the arrest? Defendants don't say.

That leaves Plaintiff's bicycle, which Defendants testified was not part of the calculus. ECF No. 29-4 at PageID.380. Yet none of the callers reported a bicycle, the tire tracks ran "side by side" with someone else's footprints, the tracks were "not detected" at the law firm, and the tracks were not detected until "300 feet" after the footprints began at the medical building. *See* ECF No. 29-5 at PageID.409–10. That is, the footprints did not run parallel with even half of the trail of footprints. Simply put, Defendants ignored the evidence that cast doubt on their hunch. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) ("[A]n officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence.").

In sum, Defendants merely surmised Plaintiff was at the scene of the crime. Thus, no reasonable juror could conclude that Defendants had reasonably trustworthy information sufficient to believe that Plaintiff maliciously destroyed any property. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also* ECF No. 29-7 at PageID.452 (granting a *nolle prosequi* dismissal of the charges

because "[p]roper identification of [Plaintiff] cannot be produced"). Consequently, Defendants are not entitled to qualified immunity on this claim either.

## V.

Next, Defendants challenge Plaintiff's Municipal Liability claim. Although he alleges that the City of Saginaw caused his constitutional injuries through both an unconstitutional policy and a custom of failing "to adequately supervise and train its officers," ECF No. 1 at PageID.8–9, Defendants tersely argue that he does not "identify a specific policy or custom that creates a direct causal link to the injuries," ECF No. 26 at PageID.111. Because Plaintiff identifies both, the real issue is whether the City of Saginaw is liable for either one.

## A.

Because § 1983 "does not permit a municipal entity to incur liability under a theory of *respondeat superior*," *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), "[a] plaintiff asserting a [§] 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [City] itself[,] and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1994)); *accord City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 n.2 (1988) (plurality opinion) ("Congress intended to hold municipalities responsible under § 1983 only for the execution of official policies and customs."). "Where the identified policy is itself facially lawful, the plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

- 13 -

Plaintiff identifies the Saginaw Police Department's "Arrest, Search, and Transport Policy,"[2] issued by Chief of Police Robert M. Ruth on January 25, 2017. ECF No. 29-11 at PageID.514–20.

And there is no genuine dispute of fact as to whether Defendants were executing that policy when they arrested, searched, and transported Plaintiff—as evidenced by the testimony of Defendants' supervisor and Defendant's responses to interrogatories acknowledging their obligation to follow it and their adherence to it without any violations. *See* Sgt. James Walny Dep. 25:19–27:10, ECF No. 29-8 at PageID.460–61 ("[T]his policy [is] what is supposed to be used by the officers to dictate how they determine arrest or make a search of a person's property."); Defs.' Resp. to Interrog. No. 4, ECF No. 29-10 at PageID.500 ("Defendants are not aware of any violations of policy as described."); Defs.' Resp. to Interrog. No. 5, ECF No. 29-10 at PageID.501 (responding that Defendants' supervisors "did not find Defendants' actions to violate any applicable policy" (emphasis omitted)).

Plaintiff has also demonstrated Defendants' deliberate indifference in executing the Policy, as required of him because he does not demonstrate that the Policy is facially unconstitutional. *See Gregory*, 444 F.3d at 752 ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (quoting *Brown*, 520 U.S. at 410)). As explained above, there is no dispute with respect to whether Defendants were deliberately indifferent to a known risk that they were arresting Plaintiff without probable cause, a warrant, and an exception to the warrant requirement. *See* discussion *supra* Part IV (explaining

---

[2] The Saginaw Police Department's Arrest, Search, and Transport Policy "guide[s] officer discretion and set[s] forth responsibilities of officers when affecting [sic] an arrest" by outlining the "situations" in which "[a]ny officer may arrest a person without warrant," "[w]hen and where arrests may be made," and the proper "[m]anner of effecting an arrest." ECF No. 29-11 at PageID.514–16.

that Defendants chose not to look at a picture that they possessed that would have irrefutably demonstrated a lack of probable cause to arrest Plaintiff for the alleged crime). And Plaintiff has also demonstrated the deliberate indifference of the Chief of Police and the City of Saginaw based on their decisions "not to discipline these officers," ECF No. 29 at PageID.316, which Defendants' supervisor testified is true, *see* ECF Nos. 29 at PageID.300–01; 29-8 at PageID.462–63.[3]

Since Plaintiff identified the policy that Defendants were executing when their actions caused his injuries with deliberate indifference, the next question is whether Plaintiff can establish a connection between Chief Ruth's Policy and the City of Saginaw. He can.

"[D]ecisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.12 (1986). For such decisions represent municipal policy. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 709 (1989) ("[T]he school district could be held liable for the actions of Principal Todd or Superintendent Wright only if those officials were delegated policymaking authority by the school district or acted pursuant to a well settled custom that represented official policy."). Read "Chief of Police" for "Sheriff" and Plaintiff has made his case.

The City of Saginaw has policymaking authority over its law-enforcement decisions. MICH. CONST. art. VII, § 22. ("Each such city and village [that has a charter] shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government,

---

[3] Notably, this is not to say that the Policy itself is unconstitutional. A *Monell* claim does not require the plaintiff to establish that the policy in question is unconstitutional, nor does it require the defendant to show the policy is unconstitutional. Instead, the focus may be on whether the state actor's execution of the policy, as applied, caused the plaintiff's injuries. *See Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). That is, a *Monell* based on a state actor's deliberate indifference in executing a municipal policy says nothing of the policy's constitutionality.

subject to the constitution and law."); *id.* art. VII, § 34 ("The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor.").

But the City of Saginaw has delegated that policymaking authority to Chief of Police Robert M. Ruth. *See* SAGINAW, MICH., CODE § 11.18(A)(1) (2017) ("The Police Department shall be headed by the Chief of Police who shall be charged with the enforcement of law and order and the protection of life and property within the jurisdiction of the city."); *id.* § 12.042(D), (E)(1)(b), (F)(1), (G), (I)(1)(b) (creating a wholly independent Citizen–Police Advisory Commission to "provide recommendations to the Police Chief" regarding "practices and policies bearing on the city's exercise of the policing function" without "impair[ing] the authority and responsibility of the Police Chief"); *id.* § 98.09 (authorizing the Chief of Police to issue "citations" and "notices" for violations of municipal ordinances). And  Chief Ruth exercised his delegated authority to issue the Arrest, Search, and Transport Policy. ECF No. 29-11 at PageID.520 ("Responsibility for the continuous updating and revision of this order lies with the Chief of Police or his/her designee."). Thus the Policy is directly connected to the City of Saginaw. *Cf.* Matthew N. Preston II, *The Tweet Test: Attributing Presidential Intent to Agency Action*, 10 BELMONT L. REV. 1, 24 (2022) (explaining that it is reasonable to attribute the decisionmaker's intent to the agency if the record demonstrates that the decisionmaker exercised delegated authority to create the challenged policy).

In sum, even drawing all reasonable inferences in Defendants' favor, there is no question that Plaintiff identified a policy, connected it to the City of Saginaw, and demonstrated that Defendants' execution of it caused his injuries. *See* ECF No. 1 at PageID.8–9; *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). Therefore, the City of Saginaw is liable for Lautner and LaDouce's execution of Chief Ruth's Arrest, Search, and Transport Policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But that is not the end.

**B.**

Plaintiff also argues that the City of Saginaw maintains a custom of inadequately training and supervising its officers on determining probable cause for searches and arrests. ECF No. 1 at PageID.8–9; *e.g.*, *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Thus he must prove that:

(1) the training or supervision was inadequate for the tasks performed;
(2) the inadequacy was the result of the municipality's deliberate indifference; and
(3) the inadequacy was closely related to or actually caused the injury.

*Id.* (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).

As to the first element, Plaintiff has provided ample "evidence suggesting that the City [of Saginaw] did not train or inadequately trained its officers that it is illegal to search a residence or individual based on false information." *Austin v. Mosley*, No. 2:20-CV-12938, 2023 WL 2696202, at *4 (E.D. Mich. Mar. 29, 2023). Defendants' supervisor testified that Saginaw officers receive no training on new law-enforcement policies, *see* Sgt. James Walny Dep., ECF No. 29-8 at PageID.461 ("[B]asically those policies get issued. You read them off and you have to sign off that you read them. That's as far as our policies go."), which includes probable cause for arrests made after the officer chose not to obtain a warrant, *see id.* at PageID.458 (testifying that he "don't know if either of those officers had any training" on probable cause). Lautner testified that he was not trained on how to assess probable cause, Steven Lautner Dep., ECF No. 29-4 at PageID.367, or on matching footprints to shoes, *id.* at PageID.382. Similarly, LaDouce testified that the City of Saginaw never trained him to decide probable cause, *see* Jordan LaDouce Dep., ECF No. 29-5 at PageID.403, or to analyze "footprints or footprint assessments," *id.* at PageID.413. Simply put, the City of Saginaw does not provide any training to its police officers for searching or arresting people without violating the "very core" of the Fourth Amendment. Lautner Dep., ECF No. 29-4 at

PageID.367 (testifying that the Saginaw police learn to determine probable cause "on-the-job");

*Florida v. Jardines*, 569 U.S. 1, 1 (2013) ("At the Fourth Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961))).

And, as explained above, there is no question that the cause of Plaintiff's injury was Saginaw's failure to train Defendants on how to determine probable cause, to establish an exception to the warrant requirement, or to effectuate the Policy properly. *See* Defs.' Resp. to Interrog. No. 9, ECF No. 29-10 at PageID.502 ("Defendants believe that every named Defendant acted in conformity with the way they were trained by the City of Saginaw Police Department." (emphasis omitted)); *see also* discussion *supra* Section V.A.

So the next issue is whether the City of Saginaw was deliberately indifferent to its failure. A plaintiff may demonstrate that the municipality was deliberately indifferent by showing that it either (1) "failed to act 'in response to repeated complaints of constitutional violations by its officers,' . . . . such that it 'was clearly on notice that the training in this particular area was deficient and likely to cause injury,'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)); or (2) failed to train its officers when the need for training "[was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," *id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The latter sort of liability is often referred to as "single-incident liability" because it does not require a pattern of violations. *Id.* Here, Plaintiff prevails on both theories.

The City of Saginaw was clearly on notice of its need to train officers on probable cause. For one thing, Saginaw's failure to train its officers on probable cause demonstrates deliberate

- 18 -

indifference because the need for such training is obvious "[g]iven the frequency with which officers must evaluate probable cause." *Ouza*, 969 F.3d at 289 ("The failure to provide any training on probable cause determinations . . . is constitutionally inadequate."). Moreover, as Plaintiff correctly notes, this Court recently found "a jury-submissible question regarding whether Officers Nelson, Lautner, LaDouce, and Cece arrested [another p]laintiff without probable cause." *Harris v. City of Saginaw*, 604 F. Supp. 3d 633, 647 (E.D. Mich. 2022), *aff'd*, 62 F.4th 1028 (6th Cir. 2023).[4] The key issue there was the same as it is here: Lautner and LaDouce's "apparent failure to consider 'all inculpatory *and* exculpatory evidence.'" *Id.* at 646 (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). Yet neither Lautner nor LaDouce has been disciplined for any probable-cause violations. *See* ECF Nos. 29 at PageID.300–01; 29-8 at PageID.462–63.

On the other hand, Plaintiff's failure-to-supervise claim lacks merit. The City's potential liability for failure to supervise also turns on whether it was deliberately indifferent to its citizens' constitutional rights. *See Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736–41 (6th Cir. 2015) (citing *Canton*, 489 U.S. at 379, 390–91). Here, "[t]he City identifies [Sgt. Walney as] the known supervisor[]," *Harris*, 62 F.4th at 1039; ECF No. 29 at PageID.300, who testified that one supervisor is always "responsible for reviewing and signing off on a case report," ECF No. 29-8 at PageID.456; *Ouza*, 969 F.3d at 289; (finding a genuine question of fact based on city's lack of "evidence that it does in fact evaluate, review, or monitor the conduct of its officers").

That is, there is no question that the City of Saginaw (1) is liable for every theory of Plaintiff's failure-to-train claim and (2) is not liable for Plaintiff's failure-to-supervise claim.

---

[4] Saginaw has a history of searches and seizures made without probable cause. *E.g.*, *Brindley v. Best*, 192 F.3d 525, 535 (6th Cir. 1999) ("[N]o reasonable officer in the defendants' position could have believed . . . was evidence of criminal activity."); *Bey v. Saginaw Cnty.*, 649 F. Supp. 62, 63 (E.D. Mich. 1986) (noting that Saginaw officers made an unlawful arrest without probable cause); *mot. for relief from j. denied*, *Bey v. Allen*, 2007 WL 269532 (E.D. Mich. Jan. 24, 2007).

**VI.**

Lastly, Defendants have not raised any arguments with respect to Plaintiff's claims for Unlawful Seizure, Malicious Prosecution, Unlawful Imprisonment, or Intentional Infliction of Emotional Distress. Nor have they asserted governmental immunity on the state claims. *See, e.g.*, *Kendricks v. Rehfield*, 716 N.W.2d 623, 625 (Mich. Ct. App. 2006) (finding "an egregious injury" where "officers ignored plaintiff's claim of mistaken identity, and plaintiff was held in jail pending trial for seven months until his claim of mistaken identity was confirmed," despite the officers having "access to fingerprints and photographs [that] could have easily confirmed plaintiff's identity").

In the interests of judicial economy and ensuring the case is properly framed for the jury, the Parties will be granted leave to file motions for summary judgment on Plaintiff's remaining four claims. *See Thomas v. Lambert*, 587 F. Supp. 3d 635, 641 (E.D. Mich.), *recons. denied*, 594 F. Supp. 3d 889 (E.D. Mich. 2022); *see also Miner v. Ogemaw Cnty. Rd. Comm'n*, 594 F. Supp. 3d 912, 926 (E.D. Mich. 2022) ("Sixth Circuit policy 'values the disposition of cases on their merits.'" (quoting *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006))).

**VII.**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 26, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** on Plaintiff's claims for assault and battery and failure to supervise; it is **DENIED** in all other regards. The following table provides the current posture of Plaintiff's claims:

| Count Number | Claim | Underlying Law | Named Defendants | Status |
|---|---|---|---|---|
| I | Unlawful Entry | 42 U.S.C. § 1983; U.S. CONST. amend. IV | All | Summ. J. for Pl. |
| I | Unlawful Seizure | 42 U.S.C. § 1983; U.S. CONST. amend. IV | All | Merits Not Addressed |

- 20 -

| II | Unlawful Arrest | 42 U.S.C. § 1983; U.S. CONST. amend. IV | All | Summ. J. for Pl. |
|----|-----------------|------------------------------------------|-----|------------------|
| II | Malicious Prosecution | 42 U.S.C. § 1983; U.S. CONST. amend. XIV | All | Merits Not Addressed |
| III | Unlawful Imprisonment | MICH. COMP. LAWS § 691.1401 *et seq.* | Lautner & LaDouce | Merits Not Addressed |
| III | Assault and Battery | MICH. COMP. LAWS § 691.1401 *et seq.* | Lautner & LaDouce | Summ. J. for Defs. |
| III | Intentional Infliction of Emotional Distress | MICH. COMP. LAWS § 691.1401 *et seq.* | Lautner & LaDouce | Merits Not Addressed |
| IV | Municipal Liability: Failure to Train | 42 U.S.C. § 1983; U.S. CONST. amend. XIV | City of Saginaw | Summ. J. for Pl. |
| IV | Municipal Liability: Failure to Supervise | 42 U.S.C. § 1983; U.S. CONST. amend. XIV | City of Saginaw | Summ J. for Defs. |

Further, it is **DECLARED** that Defendants **VIOLATED** Plaintiff's constitutional rights by searching his apartment and arresting him in violation of the United States Constitution.

Further, it is **ORDERED** that the Parties are **GRANTED** leave to file motions for summary judgment on the following claims:

(1) Unlawful Seizure, 42 U.S.C § 1983;
(2) Malicious Prosecution, 42 U.S.C § 1983;
(3) Unlawful Imprisonment, MICH. COMP. LAWS § 691.1401 *et seq.*; and
(4) Intentional Infliction of Emotional Distress, MICH. COMP. LAWS § 691.1401 *et seq.*

Further, it is **ORDERED** that the Scheduling Order is **ADJOURNED** as follows:

| | |
|--|--|
| Motions for Summary Judgment Due: | July 3, 2023; |
| Rule 26 Disclosures: | October 5, 2023; |
| Motions in Limine Due: | October 10, 2023; |
| Pretrial Disclosures Due: | November 7, 2023; |
| Final Pretrial Conference: | November 14, 2023, at 2:00 PM EDT; and |
| Jury Trial: | December 5, 2023, at 8:30 AM EDT |

**This is not a final order and does not close the above-captioned case**.

Dated: May 19, 2023

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

- 21 -