UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WILLIAM LITTLE,

                    Plaintiff,                                Case No. 1:21-cv-11104

v.                                                            Honorable Thomas L. Ludington
                                                              United States District Judge
CITY OF SAGINAW, et al.,

                    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

In January 2020, Saginaw Police Officers Steven Lautner and Jordan LaDouce were investigating broken windows when they discovered footprints in the snow, which they allege led to the front door of David Little's apartment. The officers knocked on Little's door around 7:00 PM, and Little answered soon after. As Little turned his body into his one-bedroom apartment, the officers followed immediately behind, entering Little's apartment without consent and without a warrant. The officers immediately saw a pair of Little's shoes drying next to a fan across the room. Within seven seconds—before comparing the shoes to the footprints in the snow—the officers arrested Little for malicious destruction of property. The officers then seized Little's shoes. Little was confined for five days and, although county prosecutors filed criminal charges, all charges were dismissed after prosecutors discovered eyewitness testimony that the window-breaking suspect was a different race than Little.

Little sued Officer Lautner, Officer LaDouce, and the City of Saginaw for depriving his Fourth Amendment rights to be free from unlawful entry, unlawful arrest, malicious prosecution, and unreasonable seizures. Little also alleged Officers Lautner and LaDouce committed several

torts under Michigan law: assault and battery, intentional infliction of emotional distress, and unlawful imprisonment.

In May 2023, this Court granted summary judgment for Plaintiff on two of his four Fourth Amendment claims and his *Monell* claim against the City of Saginaw. Plaintiff waived his intentional-infliction-of-emotional-distress and assault-and-battery claims. Currently before this Court are the Parties' cross-motions for summary judgment on Plaintiff's remaining claims: (1) Fourth Amendment unreasonable seizure; (2) Fourth Amendment malicious prosecution; and (3) tortious unlawful imprisonment. For the reasons discussed below, summary judgment will be granted to Plaintiff on the first and the third, and summary judgment will be granted to Defendants on the second.

## I.

### A.

Plaintiff David William Little, a 48-year-old white man, lived in a one-bedroom apartment in a Saginaw, Michigan halfway house. *See* ECF Nos. 1 at PageID.3; 29-12 at 11:50–11:53 [hereinafter "LautnerCam 4"].[1] Although the halfway house assisted recent parolees in re-entering the community, Plaintiff himself only worked at the halfway house as a groundskeeper and had no criminal history. ECF No. 29-6 at PageID.425; LautnerCam 4 at 12:00–06.

---

[1] Plaintiff electronically filed Officer LaDouce's and Officer Lautner's January 5, 2020 bodycam footage. *See* ECF Nos. 29-12; 29-13; 30. Plaintiff attached four recordings from Officer Lautner's bodycam. The first, LautnerCam 1, shows Officer Lautner's initial response to the broken windows outside of the Saginaw law firm. The second, LautnerCam 2, captures Officer Lautner's phone call with the firm's owner. The third, LautnerCam 3, shows Officer Lautner's actions inside the firm, investigating the broken windows. The fourth, LautnerCam 4, captures Office Lautner's actions at Plaintiff's apartment, including the arrest. Plaintiff also attached two recordings from Officer LaDouce's body camera. The first, LaDouceCam 1, shows Officer LaDouce assisting Plaintiff into the police car and the second, LaDouceCam 2, captures Officer LaDouce driving Plaintiff from his apartment to the Saginaw County Jail.

But this changed on January 5, 2020. That evening, Saginaw Police Officers Steven Lautner and Jordan LaDouce[2] responded to dispatch calls reporting broken windows at a Central Michigan University (CMU) facility and a local law firm. ECF Nos. 26 at PageID.100; 26-4 at PageID.203–04, 208; 29-2 at PageID.321; LautnerCam 1 at 0:00–1:00. Notably, the person who called the Saginaw Police Department to report the law firm's broken windows described the suspect as a Black man wearing a tan coat. *See* ECF Nos. 29-2 at PageID.321; 29-4 at PageID.374.

Approximately one inch of snow covered the ground that night, and the officers claim they saw footprints and a bike tire trail leading from the broken windows to Plaintiff's apartment, over four blocks away. *See* ECF Nos. 26-4 at PageID.209–11, 231–34; 29-5 at PageID.406, 408. Around 7:00 PM, Officers Lautner and LaDouce knocked on Plaintiff's door. *See* ECF Nos. 1 at PageID.3; 29-2 at PageID.326; 29-6 at PageID.437. Plaintiff answered the door and apologized to the officers for his delay in answering, noting he was asleep. LautnerCam 4 at 0:36–0:40. Officer Lautner immediately asked Plaintiff "where's your bike at?" *Id.* at 0:42–0:43. Plaintiff told the officers his bike was inside the apartment and asked, "what happened?" *Id.* at 0:43–49. Officer Lautner told Plaintiff that the officers were investigating broken windows. *Id.* at 0:50–1:00. Plaintiff responded that he knew nothing about broken windows and was "at [his] boyfriend's all day." *Id.* at 1:00–1:03. Officer Lautner told Plaintiff that he and Officer LaDouce had traced footprints from the broken windows to Plaintiff's door, and asked Little if he recently wore shoes outside. *Id.* at 1:03–1:09. Plaintiff, still standing at the door, turned his body toward the inside of his apartment. *Id.* at 1:09. As Plaintiff began to walk inside, Officer Lautner followed immediately behind, entering Plaintiff's apartment without his consent. *Id.* at 1:09–1:11.

---

[2] Officer LaDouce resigned from the Saginaw Police Department in August 2021. ECF No. 29-5 at PageID.401.

From across the room, Officer Lautner saw shoes drying on the floor of Plaintiff's apartment on a towel next to a fan and said "yeah, those shoes right there!" *Id.* at 1:14–15; ECF No. 29-5 at PageID.411 (noting Plaintiff's shoes were five-to-ten feet away). Less than seven seconds after entering Plaintiff's apartment, Officer Lautner arrested Plaintiff and told him to put his hands behind his back. *See* LautnerCam 4 at 1:15–1:20. Plaintiff complied, and Officer Lautner handcuffed him. *Id.* at 1:22–1:33. Plaintiff asked if he could put some shoes on and Officer Lautner turned to the shoes drying on the floor and said "well, those aren't going to be yours anymore because I'm taking those." *Id.* at 2:42–2:47. Officer Lautner then picked up one of the shoes, looked at its sole, and asked Plaintiff if he was drying the shoes. *Id.* at 3:42–47. Plaintiff responded "yeah, like I said, I just came from my boyfriend's." *Id.* at 3:47–3:50. Officer Lautner then picked up the second shoe, held both up to Plaintiff, and said "pretty expensive windows got broken [by] someone who has a shoeprint really similar to that," noting an oval shape near the heel of the sole of Plaintiff's shoes was "very very prevalent" in the snow prints. *Id.* at 3:53–4:10, 9:52–57.

After this "eyeball observation," Officer Lautner told Plaintiff the officers had probable cause to arrest, read Plaintiff his *Miranda* rights, and asked Plaintiff if he wanted to talk. *Id.* at 4:34–5:56; *see also* ECF Nos. 29-4 at PageID.380, 382; 29-5 at PageID.413; 29-9 at PageID.467. Plaintiff said he was "stunned," *id.* at 5:10–5:11, and denied involvement. *Id.* at 5:56–6:00 ("How in the heck can I do something if I wasn't even there?"), 7:45–47 ("I wasn't even there . . . I was at my boyfriend's."). Plaintiff did not speak with the officers aside from sharing his belief that he was "falsely being arrested . . . for something [he] didn't even do." *Id.* at 8:30–42. Officer LaDouce drove a police car to Plaintiff's door, Officer Lautner escorted Plaintiff from his apartment to the police car, and Officer LaDouce drove Plaintiff to jail. *Id.* at 12:30–13:46; *see also* LaDouceCam 2. Plaintiff was released on bond after being confined for five days. ECF No. 1 at PageID.5.

Although the county prosecutor initially charged Plaintiff criminally, all charges were dismissed in April 2021 when prosecutors discovered eyewitness testimony that the window-breaking suspect was Black. *Id.*; *see also* ECF No. 29-7 at PageID.452.

**B.**

In May 2021, Plaintiff sued Officer Lautner, Officer LaDouce, (collectively the "Officer Defendants"), and the City of Saginaw. ECF No. 1. Plaintiff's Complaint alleged the following:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Fourth Amendment Unlawful Entry, 42 U.S.C. § 1983 | The Officer Defendants |
| I | Fourth Amendment Unlawful Seizure, 42 U.S.C. § 1983 | The Officer Defendants |
| II | Fourth Amendment Unlawful Arrest, 42 U.S.C. § 1983 | The Officer Defendants |
| II | Fourth Amendment Malicious Prosecution 42 U.S.C. § 1983 | The Officer Defendants |
| III | Unlawful Imprisonment, MICH. COMP. LAWS § 691.1401 *et seq.* | The Officer Defendants |
| III | Assault and Battery, MICH. COMP. LAWS § 691.1401 *et seq.* | The Officer Defendants |
| III | Intentional Infliction of Emotional Distress, MICH. COMP. LAWS § 691.1401 *et seq.* | The Officer Defendants |
| IV | Fourth Amendment Deprivations, 42 U.S.C. § 1983 (*Monell*) | The City of Saginaw |

*See id.* at PageID.5–9.

The Parties adjourned the case for over a year, and participated in facilitation, which proved unsuccessful. *See* ECF Nos. 10; 17; 19; 20; 25. In February 2023, Defendants sought summary judgment on Plaintiff's (1) unlawful entry, (2) unlawful arrest, and (3) *Monell* municipality claims. ECF No. 26.

In May 2023, this Court denied Defendants' Motion for Summary Judgment in part and declared that Plaintiff's Fourth Amendment rights had been violated. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916 (E.D. Mich. May 19, 2023).

This Court held the Officer Defendants' entry into Plaintiff's apartment without a warrant and without consent violated clearly established Fourth Amendment precedent, rejecting the Officer Defendants' defense of qualified immunity. *Id.* at *3–5.

Plaintiff was similarly granted summary judgment on his Fourth Amendment unlawful arrest claim, because "Defendants did not have a reasonable semblance of probable cause that Plaintiff committed a crime." *Id.* at *5–7. Specifically, this Court held "[n]either [Plaintiff's] shoes nor their purported match to the footprints could establish probable cause because they came from an unlawful search." *Id.* at *6 (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *United States v. Jenkins*, 396 F.3d 751, 758 (6th Cir. 2005) (collecting cases); and *People v. Hammerlund*, 977 N.W.2d 148, 157 (Mich. Ct. App. 2021)). And even if the shoes could *theoretically* serve as a basis for probable cause, the standard was not satisfied here because "the shoes do not fit the prints" and a "brief pause and comparison would have revealed" the following discrepancies:

(1) The prints had a "blank crescent" shape near the heel while the sole of Plaintiff's shoes had an oval shape near the heel with the word "Aviva" in the middle of the oval;
(2) The prints did not reflect ten short starburst indentations stemming from the oval on the sole of Plaintiff's shoe;
(3) The prints were "narrow and curved" while Plaintiff's shoes were "thick and straight; and
(4) Plaintiff's shoes were wider than the prints.

*Id.* (citing ECF Nos. 26-3 at PageID.165, 166, 170). Although the Officer Defendants suggested a bike trail lead to Plaintiff's apartment, this Court noted the trail was "not part of the [probable cause] calculus" because none of the callers reported a bike, no bike tracks were detected at the law firm, and the tracks were not detected until 300 feet *after* the footprints began at the CMU building. *Id.* at *7.

This Court also granted Plaintiff summary judgment on his *Monell* municipality claim against the City of Saginaw because Plaintiff identified the Saginaw Police Department's "Arrest,

Search, and Transport" policy, connected it to the City of Saginaw, and demonstrated that the Officer Defendants' execution of the policy injured him. *Id.* at *8–9. And although this Court dismissed Plaintiff's failure-to-supervise *theory* of *Monell* liability, Plaintiff prevailed on his failure-to-train *theory* because "the City of Saginaw [unquestionably] d[id] not provide *any* training to its police officers for searching or arresting people without violating the 'very core' of the Fourth Amendment." *Id.* *9–10 (emphasis added).

In sum, Plaintiff was granted summary judgment on his unlawful entry, unlawful arrest, and *Monell* claims. *Id.* at *11. Defendants were granted summary judgment on Plaintiff's assault-and-battery tort claim because Plaintiff waived the claim. *See id.* at *2, n. 1. And this Court granted the Parties leave to file additional motions for summary judgment on Plaintiff's remaining, unaddressed, claims: (1) Fourth Amendment unlawful seizure; (2) Fourth Amendment malicious prosecution; (3) state tort unlawful imprisonment; and (4) state tort intentional infliction of emotional distress. *Id.* at *11.

Although the Officer Defendants appealed,[3] ECF No. 40, this Court denied a discretionary stay pending the appeal. ECF No. 43. Accordingly, in June 2023, Defendants filed their second Motion for Summary Judgment addressing Plaintiff's four remaining claims. ECF No. 44. Plaintiff filed a cross-Motion for Summary Judgment on all claims other than his intentional infliction of emotional distress claim, which he conceded should be dismissed. ECF No. 48 at PageID.683–84 (noting the response should be construed as a cross-motion for summary judgment).

---

[3] The Officer Defendants' appeal of this Court's May 2023 Opinion remains pending, in part because the Parties have agreed to the Sixth Circuit's mediation program. *Little v. City of Saginaw, et. al*, CA No. 23-1535 (6th Cir.), ECF No. 14.

## II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party, who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When the moving party "also bears the burden of persuasion at trial, [its] 'initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) ("[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (quoting W. Schwarzer,

*Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984) (emphasis omitted))).

In reviewing cross-motions for summary judgment, courts must apply the proper standard of review for each motion and may not "treat the case as if it was submitted for final resolution on a stipulated record." *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)); *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) ("[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)) (internal quotation marks omitted)).

### III.

Because Plaintiff waives his intentional-infliction-of-emotional-distress claim, the three claims to be addressed are Plaintiff's (1) Fourth Amendment unlawful seizure claim; (2) Fourth Amendment malicious prosecution claim; and (3) state unlawful imprisonment claim. Each claim will be addressed in turn.

### A. Fourth Amendment Unlawful Seizure

In Count I of his Complaint, Plaintiff alleges that his shoes were seized without a warrant or probable cause, in violation of the Fourth Amendment. ECF No. 1 at PageID.6. Defendants argue that probable cause supported the seizure and, in the alternative, that the seizure of Plaintiff's shoes required less than probable cause. ECF No. 44 at PageID.664–66. This Court already held that Plaintiff's *arrest* was not supported by a warrant or probable cause, in violation of the Fourth

- 9 -

Amendment. The seizure of Plaintiff's shoes is no different. Summary judgment will be awarded to Plaintiff on this claim.

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. Shoes are "effects" under the Fourth Amendment. *See Brown v. Kowalski*, No. CV 15-12346, 2018 WL 2943442, at *7 (E.D. Mich. June 12, 2018). When analyzing a Fourth Amendment unlawful seizure claim, courts first ask whether a seizure occurred and, if so, whether this seizure was reasonable. *See Graves v. Mahoning Cnty.*, 821 F.3d 772, 775 (6th Cir. 2016) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599, (1989) and *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir.2014)). But, here, Defendants concede Plaintiff's shoes were seized on January 5, 2020. *See* ECF No. 44 at PageID.664–66; 29-4 at PageID.380; LautnerCam 4 at 9:30–36 ("What I'm going to do is . . . I'm going to seize your shoes."). Thus, the only question is whether this seizure was reasonable.

Although reasonableness varies from case to case, *Graves v. Mahoning Cnty.*, 821 F.3d 772, 775 (6th Cir. 2016), warrantless seizures are "presumptively unreasonable" and violate the Fourth Amendment unless "the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Hopkins v. Nichols*, 37 F.4th 1110, 1117 (6th Cir. 2022) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)); *see also Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir. 2024) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)); *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). Here, it is undisputed that the Officer Defendants did not obtain a warrant before arresting Plaintiff and seizing his shoes. *See Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *3 (E.D. Mich. May 19, 2023)

In their second Motion for Summary Judgment, Defendants do not argue that exigency or any exception to the warrant requirement existed. *See* ECF No. 44 at PageID.664–65. Instead,

Defendants argue (1) the Officer Defendants had probable cause to seize; and (2) even if probable cause was lacking, "probable cause is not required because the seizure caused minimal intrusion and was necessary for the investigation of the crime at issue." ECF No. 44 at PageID.666. But both arguments misinterpret Fourth Amendment precedent, and the former ignores this Court's prior opinion.

Defendants' first argument—that the *Officer Defendants* had probable cause to seize Plaintiff's shoes, *id.* at PageID.665—misses the mark because whether the *Officer Defendants* had probable cause is irrelevant. "One of the policy rationales supporting the warrant requirement is that *neutral and detached magistrates*, not on-the-ground officers, should assess whether probable cause exits for a search or seizure to be effectuated." *Reed v. Presque Isle Cnty.*, No. 1:21-CV-11112, 2023 WL 7545219, at *5 (E.D. Mich. Nov. 13, 2023) (citing *Shadwick v. Tampa*, 407 U.S. 345, 350 (1972) ("This Court long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'") (emphasis in original). Further, Defendants' continued assertion that probable cause existed ignores this Court's holding that "Defendants did not have a reasonable *semblance* of probable cause that Plaintiff committed a crime" because even a cursory comparison of Plaintiff's shoes to the alleged prints in the snow would have revealed numerous differences. *Little*, 2023 WL 3571916, at *6 (emphasis added).

So, Defendants pivot and cite *United States v. Place* in support of an alternative argument that the warrantless seizure of Plaintiff's shoes should be upheld on less-than-probable cause. ECF No. 44 at PageID.664–65. But *Place* has no place here.

In *Place*, Raymond Place was flying from Miami to New York. *United States v. Place*, 462 U.S. 696, 698 (1983). At the Miami airport, agents became suspicious of Place and approached

him in line, but did not search his bags because "his flight was about to depart." *Id.* While Place was on the plane, agents found the addresses on his luggage tags did not match nor exist. *Id.* Accordingly, when Place landed in New York, DEA agents approached and asked to search his two bags. *Id.* Although Place refused consent, the agents seized his bags for 90 minutes to perform a drug-dog "sniff test," which alerted the officers to the presence of narcotics in the smaller bag. *Id.* at 699. The DEA agents then secured a warrant for the smaller bag, opened it, and discovered 1,125 grams of cocaine. *Id.* The Supreme Court borrowed from *Terry v. Ohio* and balanced the government interest supporting the warrantless seizure against the degree of intrusion on Place's privacy. *Id.* at 702–07. To Defendants' point, the Court noted—in dicta—that, under *Terry*'s balancing test, officers could *theoretically* seize items without a warrant on less than probable cause "briefly to investigate circumstances that aroused . . . suspicion, provided that the investigative detention is properly limited in scope." *Id.* at 706. But the Court concluded that the 90-minute seizure of Place's luggage was *not* sufficiently brief nor sufficiently limited in scope, and was unreasonable in violation of the Fourth Amendment. *Id.* at 710.

Since *Place* was decided, courts ask two questions to determine whether a seizure of personal property based upon less than probable cause is reasonable under the Fourth Amendment: (1) whether the seizing officer had a reasonable and articulable suspicion that the property to be seized related to criminal activity; and, if so, (2) whether the subsequent seizure was "reasonable, both in duration and in intrusiveness.'" *Simmons v. Grandison*, 833 F. Supp. 2d 702, 710 (E.D. Mich. 2011) (quoting *Farm Labor Org. Comm. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 544 (6th Cir.2002) (citing *United States v. Place*, 462 U.S. 696, 708 (1983))).

Whether the Officer Defendants had reasonable and articulable suspicion to seize Plaintiff's shoes is admittedly a close call. Although this Court has already held they did not have

*probable cause*, *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *6 (E.D. Mich. May 19, 2023), reasonable and articulable suspicion is a less demanding standard. *Alabama v. White*, 496 U.S. 325, 330 (1990). Indeed, reasonable, articulable suspicion requires less than probable cause but more than an officer's mere "hunch" or "inchoate . . . suspicion" of criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Here, on one hand, the Officer Defendants allege they tracked footprints in the snow from the scene of a crime directly to Plaintiff's apartment and, upon entering, immediately saw a pair of shoes drying near a fan. ECF No. 44 at PageID.559–60. On the other hand, the Officer Defendants did not compare the shoes to the prints, or to the photos of the prints on the Officer Defendants' phones before arresting Plaintiff. *Little*, 2023 WL 3571916, at *6. Further, drying one's shoes can hardly be indicative of criminal activity in the middle of a mid-Michigan winter. But even assuming *arguendo* that the Officer Defendants had reasonable, articulable suspicion, the duration and intrusiveness of the subsequent warrantless seizure render it unreasonable.

Unlike the theoretically reasonable "brief" or "momentary" seizure in *Place*, the seizure of Plaintiff's shoes was permanent. *Compare United States v. Place*, 462 U.S. 696, 703 (1983) *with* ECF No. 48 at PageID.693. The record does not reflect whether the Officer Defendants ever returned Plaintiff's shoes. And, turning to the government interest, Defendants point to the need to "investigat[e] the crime at issue." ECF No. 44 at PageID.666. But Plaintiff had already been arrested,[4] and the Officer Defendants never used the shoes throughout their investigation. Instead of comparing the shoes to the prints or the photos on their phones before Plaintiff's arrest, the Officer Defendants merely placed the shoes in their squad car. *See* ECF No. 29-2 at PageID.330;

---

[4] Although one exception to the warrant requirement applies for items seized incident to a lawful arrest, this exception does not apply here, as this Court has already held both the Officer Defendants' entry and Plaintiff's arrest was unlawful, in violation of the Fourth Amendment. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *10 (E.D. Mich. May 19, 2023).

*Little*, 2023 WL 3571916, at *6. And, although crime detection and prevention are legitimate government interests when seizing, the interest in *this case*—involving two broken windows—is far weaker than in *Place*, which involved nationwide narcotics distribution. *See Place*, 462 U.S. at 704.

The insubstantial government interest here is outweighed by the seizure's substantial intrusion on Plaintiff's privacy interests. Unlike the theoretically reasonable seizure of Place's bags in a public airport, Plaintiff's shoes were seized from his one-bedroom apartment, where he lived alone. *Compare Place*, 462 U.S. at 707 *with* ECF Nos. 44 at PageID.660 *and* LautnerCam 4 at 11:50–11:53; *see also Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (noting the "home is first among equals" under the Fourth Amendment and that a person's right to be free from unreasonable government intrusion in his home is "[a]t the Amendment's 'very core'" (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961))).

Had the Officers Defendants seized Plaintiff's shoes briefly, to compare them to the photos of the prints on their phones or the actual footprints allegedly just outside Plaintiff's apartment, perhaps the warrantless seizure on less than probable cause would have been reasonable under the Fourth Amendment. But this is not the seizure that occurred. The Officer Defendants seized Plaintiff's shoes from his apartment, after unlawfully entering it, before even attempting to compare the shoes to the alleged prints, even though they easily and quickly could have. The warrantless seizure of Plaintiff's shoes was thus unreasonable, in violation of the Fourth Amendment. *See Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir. 2024) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)); *see also Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010).

### 1.  Qualified Immunity

Defendants next argue that, even if the seizure violated Plaintiff's Fourth Amendment rights, the Officer Defendants are entitled to qualified immunity. ECF No. 44 at PageID.671–73. Not so.

"Qualified immunity shields government officials from civil liability in the performance of their duties so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When assessing qualified immunity, courts apply the "*Saucier* two step," asking (1) whether a constitutional right has been violated; and (2) whether that right was clearly established—though reviewing courts need not proceed in this order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be treated as mandatory."). Plaintiffs bear the burden of demonstrating both prongs. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).

Having established the Officer Defendants' seizure of Plaintiff's shoes was unreasonable in violation of Plaintiff's Fourth Amendment right, the only issue that remains is whether this right is clearly established. This prong of the qualified immunity analysis asks whether the "'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Barton v. Martin*, 949 F.3d 938, 947–48 (6th Cir. 2020) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009) and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While there need not be a case directly on point, existing precedent must place the constitutional question "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Sources of "clearly established law" include, from most to least persuasive, Supreme Court precedent,

controlling Sixth Circuit precedent, this Court's precedent, or a "robust consensus of cases of persuasive authority." *See Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012); *Ashcroft*, 563 U.S. at 742.

The law clearly establishes that the Officer Defendants' warrantless seizure of Plaintiff's shoes violated his Fourth Amendment rights. The Supreme Court and the Sixth Circuit have repeatedly recognized that warrantless seizures are presumptively unreasonable, unless an exception to the warrant requirement applies or exigency demands action. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("It is a 'basic principle of Fourth Amendment law that . . . seizures inside a home without a warrant are presumptively unreasonable.'" (quoting Groh *v. Ramirez*, 540 U.S. 551, 559 (2004)); *Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir. 2024); *Andrews v. Hickman Cnty*., 700 F.3d 845, 854 (6th Cir. 2012). And, given the circumstances of this case—a reasonable officer would have understood that no exceptions applied and no exigency existed.[5] Defendants argue only that the officers were simply collecting evidence "showing [Plaintiff's] presence at the scene of the crime." ECF No. 44 at PageID.673. But this Court has noted, numerous times, that even a quick comparison would have revealed the shoes were *not* evidence of Plaintiff's presence at either crime scene. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *6

---

[5] "When considering whether a right is clearly established, '[t]he key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional.'" *United Pet Supply, Inc. v. City of Chattanooga* 768 F.3d 464, 485 (6th Cir. 2014) (quoting *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir.2009). Thus, "'in an obvious case, general standards can clearly establish the answer, even without a body of relevant case law.'" *Id.* (quoting *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir.2005)). This court will not analyze each exception of the warrant requirement. This Court is satisfied that the Officer Defendants were on notice that their seizure of Plaintiff's shoes—before any attempt to investigate or connect the shoes with the crime—was without a warrant, without exigency, and without exception. Indeed, this Court's May 2023 Opinion foreclosed the applicability of consent seizures, seizures incident to a valid arrest, and seizures of items found in plain view—because Plaintiff did not consent to the Officer Defendants' entry and their arrest was unlawful. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *3–7 (E.D. Mich. May 19, 2023).

(E.D. Mich. May 19, 2023). And even if the shoes were evidence, no exigency justified their immediate, warrantless seizure. *United States v. Plavcak*, 411 F.3d 655, 663 (6th Cir. 2005) (noting exigency to justify warrantless entry and seizure when there is a concern that evidence will be imminently destroyed). Plaintiff was already handcuffed. *See* LatnerCam4 at 1:17–12:25. No one else was in his one-bedroom apartment. *Id.*

In sum, the Officer Defendant's warrantless seizure of Plaintiff's shoes was unreasonable, in violation of clearly established Fourth Amendment precedent. Summary judgment will be awarded to Plaintiff on this claim.[6]

### B. Fourth Amendment Malicious Prosecution

Turning to Plaintiff's Fourth Amendment malicious prosecution claim, Plaintiff alleges that he "was only prosecuted because" the Officer Defendants "made material misrepresentations" in their incident report. ECF No. 1 at PageID.6-7. But the Officer Defendants did not include any *false* statements in their report—let alone deliberately or recklessly. And even if the Officer Defendants' statements were sufficiently false, the statements were insufficiently connected to the prosecutor's independent decision to initiate criminal charges. Thus, summary judgment on this claim will be granted to Defendants.

---

[6] Recall that, in May 2023, this Court granted summary judgment to Plaintiff on his *Monell* claim against Defendant City of Saginaw, holding that the City was liable for depriving Plaintiff's Fourth Amendment rights to be free from unlawful *arrest* and unlawful *entry*—the only Fourth Amendment claims addressed by the Parties at the time. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *7–10 (E.D. Mich. May 19, 2023). For the same reasons, the City of Saginaw is also liable under *Monell* for the deprivation of Plaintiff's Fourth Amendment right to be free from unreasonable *seizures*. *See id.* (noting Plaintiff was constitutionally harmed by the Officer Defendants execution of the Saginaw Police Department's "Arrest, Search, and Transport Policy" and noting "[s]imply put, the City of Saginaw does not provide any training to its police officers for searching or arresting people without violating the 'very core' of the Fourth Amendment").

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Wright v. City of Euclid*, 962 F.3d 852, 875 (6th Cir. 2020) (internal quotations omitted). To succeed on this claim, a plaintiff must prove the following:

(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff;
(2) there was no probable cause for the criminal prosecution;
(3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and
(4) the criminal proceeding was resolved in the plaintiff's favor.

*See Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

The first element proves fatal for Plaintiff. The Sixth Circuit instructs that the "the term 'participated,'" as used in the first element, "should be construed within the context of tort causation principles. Its meaning is akin to 'aided.' To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id.* (quoting *Sykes v. Anderson*, 625 F.3d 294, 308, n.5 (6th Cir.2010)). Plaintiff alleges the Officer Defendants "participated" in the decision to prosecute by making "material misrepresentations" in their incident reports. ECF No. 1 at PageID.6–7. But more than mere misrepresentations is required.

Because officers are responsible for *investigating* instead of *prosecuting* criminal activity, their investigative work "must be marked by some kind of blameworthiness, something beyond mere negligence or innocent mistake," to satisfy the elements of a Fourth Amendment malicious prosecution claim. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). When a Fourth Amendment malicious prosecution claim is brought against an investigating officer, the officer violates a suspect's clearly established right "only when his deliberate or reckless *falsehoods* result in arrest and prosecution without probable cause." *Id.* (quoting *Newman v. Township of Hamburg*,

- 18 -

773 F.3d 769 (6th Cir.2014) (emphasis added); *see also Lopez v. Foerster*, No. 20-2258, 2022 WL 910575, at *4 (6th Cir. Mar. 29, 2022)

But here, the Officer Defendants' incident reports did not contain deliberate or reckless *false* statements. The Officer Defendants' incident reports, provided to prosecutors, explained that the officers "observed a pair of tennis shoes laying up on their edge in front of a working fan as to dry them out" and noted (1) that "[t]he bottoms of the shoes were *very similar* to the impressions left" at the scene of both broken windows and (2) were "a *very close match* to the impressions left" in the snow. ECF No. 26-3 at PageID.161. Although this Court has held that Plaintiff's shoes did not conclusively match the prints in the snow, the two were sufficiently similar such that the Officer Defendants' report representations were not false:



ECF No. 26-3 at PageID.165, 169, 170.

And even if these two statements within the Officer Defendants' eight-page report were sufficiently false, there is no evidence to suggest these statements *resulted* in criminal charges

against Plaintiff. Importantly, the Officer Defendants attached their bodycam footage, and pictures of Plaintiff's shoes and the foot prints in the snow, to the incident report before sending the report to the Saginaw County Prosecutor's Office. ECF No. 26-3 at PageID.161 ("See attached photographs."), PageID.163 (noting nine attached photos, attached bodycam footage, and that the case file was submitted to the Saginaw County Prosecutor's Office). After reviewing the report in its entirety, watching the bodycam footage, and comparing the photos themselves, Saginaw County prosecutors decided to charge Plaintiff with malicious destruction of property. *Id.* at PageID.163; *see also* ECF No. 29-4 at PageID.381. Although the prosecutors may have erred in comparing the shoes to the prints and in concluding probable cause supported Plaintiff's criminal charges, the prosecutors are not being charged with malicious prosecution—the Officer Defendants are. And although the Officer Defendants violated Plaintiff's Fourth Amendment rights by warrantlessly *entering* Plaintiff's apartment, *seizing* his shoes, and *arresting* him, no reasonable juror could conclude they sufficiently participated in Plaintiff's *prosecution* to hold them liable on this separate Fourth Amendment claim. *See* ECF Nos. 29-4 at PageID.381 (Officer Lautner testifying he had no "communications or discussions with the prosecutors"); 29-5 at PageID.414 (Officer LaDouce testifying he had no "interaction with the prosecutor or the prosecutor's office regarding the charges against [Plaintiff]"). Accordingly, summary judgment will be granted to Defendants on this claim.

### C. Unlawful Imprisonment

Turning to the final issue on the Parties' cross-motions for summary judgment, Plaintiff alleges the Officer Defendants unlawfully imprisoned him in violation of Michigan law. ECF No. 1 at PageID.7–8. Defendants argue that Plaintiff's arrest was supported by probable cause, so the tort or unlawful imprisonment does not lie. ECF No. 44 at PageID.670. In the alternative, the

Officer Defendants argue they are immune from liability under Michigan's Governmental Tort Liability Act (GTLA). *Id.* at PageID.673–75. Because this Court has already held Plaintiff's arrest was unlawful and unsupported by probable cause, and because the Officer Defendants are not statutorily immune from this intentional tort, summary judgment will be granted to Plaintiff.

"False imprisonment is the unlawful restraint of an individual's personal liberty or freedom of locomotion." *Clarke v. K Mart Corp*, 495 N.W.2d 820, 823 (Mich. Ct. App. 1992) (quoting *Stowers v Wolodzko*, 191 N.W.2d 355, 363 (Mich. 1971)). To succeed on a false imprisonment claim under Michigan law, a plaintiff must prove (1) the defendant acted in accordance with an intent to confine plaintiff; (2) defendant's act directly or indirectly resulted in plaintiff's confinement; and (3) plaintiff was conscious of the confinement. *Janetsky v. Cnty. of Saginaw*, No. 346542, 2023 WL 6322639, at *3 (Mich. Ct. App. Sept. 28, 2023). However, when a plaintiff pursues an unlawful imprisonment claim against those who have the lawful authority to arrest and imprison—police officers—the plaintiff can prevail by showing the defendants' "arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003) (collecting cases and dismissing unlawful imprisonment claim because arrest was supported by probable cause); *see also Odom v. Wayne Cnty.*, 760 N.W.2d 217, 229 (Mich. 2008) (noting "a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal").

Here, in granting summary judgment to Plaintiff on his Fourth Amendment unlawful arrest claim, this Court already held that the Officer Defendants lacked probable cause to arrest Plaintiff because Plaintiff's shoes were fruits of an unlawful search and because "a brief pause and comparison" would have revealed that the shoes did not match the prints. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *6–7 (E.D. Mich. May 19, 2023). Thus, the Officer

Defendants also unlawfully imprisoned Plaintiff under Michigan law. The only remaining issue, then, is whether the Officer Defendants are nevertheless immune.

### 1.  Tort Immunity

The GTLA,  MICH. COMP. LAWS § 691.1407 *et seq*., shields government officials from tort liability, depending on the type of official and the type of tort involved. When analyzing individual immunity, the Michigan Supreme Court clarified the applicable framework as follows:

(1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MICH. COMP. LAWS § 691.1407(5).[7]

(2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

(3) If the plaintiff pleaded a negligent tort, proceed under MICH. COMP. LAWS § 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:
    (a) the individual was acting or reasonably believed that he was acting within the scope of his authority
    (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and
    (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross v. Consumers Power Co.*, 363 N.W.2d 641 (Mich. 1984) by showing the following:
    (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
    (b) the acts were undertaken in good faith, or were not undertaken with malice, and
    (c) the acts were discretionary, as opposed to ministerial.

---

[7] Subsection (5) entitles judges, legislators, and high-rank executives with immunity from *all* tort claims if the official was "acting within the scope of his or her judicial, legislative, or executive authority." MICH. COMP. LAWS § 691.1407(5).

*Reed v. Presque Isle Cnty.,* No. 1:21-CV-11112, 2023 WL 7545219, at *20 (E.D. Mich. Nov. 13, 2023) (citing *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008)).

Applying this framework, neither Defendant Lautner nor Defendant LaDouce are immune from liability on Plaintiff's unlawful imprisonment claim. Officer Defendants Lautner and LaDouce are not high-ranking appointed executives entitled to absolute immunity. *See* ECF Nos. 26-4 at PageID.248 (noting Officer Lautner's supervising sergeants); 29-5 at PageID.401 (noting Officer LaDouce's supervising sergeants). And unlawful imprisonment is an intentional tort under Michigan law. *See Odom*, 760 N.W.2d 217, 228 (Mich. 2008); *Janetsky v. Cnty. of Saginaw*, No. 346542, 2023 WL 6322639, at *2 (Mich. Ct. App. Sept. 28, 2023); *Berry v. City of Detroit*, No. 360800, 2023 WL 3560451, at *2 (Mich. Ct. App. May 18, 2023); *Simmons v. Greektown Casino LLC*, No. 286845, 2009 WL 3051471, at *2 (Mich. Ct. App. Sept. 24, 2009).

Because Plaintiff alleges an intentional tort and the Officer Defendants are not entitled to absolute immunity, they are immune only if they, in good faith or without malice, took discretionary action throughout the course of their employment. *See Odom*, 760 N.W.2d at 228. It is undisputed that the Officer Defendants arrested Plaintiff in their discretion, during their employment, and within the scope of their authority as Saginaw police officers. *See* ECF No. 29-11; *see Ross v. Consumers Power Co.*, 363 N.W.2d 640, 648 (noting "discretionary acts" involve significant decision-making while "ministerial acts" concern the execution of a decision and may only involve "minor decision-making"). The only disputed issue is whether the Officer Defendants acted in good faith, or without malice.

Defendants conclusively argue "nothing as set forth in Plaintiff's allegations constitutes gross negligence." ECF No. 44 at PageID.674; *see also* ECF No. 49 at PageID.705–07 ("Plaintiff has no record evidence to present to a jury to carry his burden of establishing his claim of gross

negligence.") Aside from erroneously applying the GTLA analysis for *negligent* torts, Defendants misunderstand the burden for tort immunity. At the summary judgment stage, the party alleging immunity from intentional torts has the burden of establishing that they acted in good faith or without malice. *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 225, 227–28 (Mich. 2008); *Berry v. City of Detroit*, No. 360800, 2023 WL 3560451, at *3 (Mich. Ct. App. May 18, 2023). Defendants have not satisfied this burden. *See Berry*, 2023 WL 3560451, at *4 ("A conclusory statement . . . will not suffice."); *Simmons v. Greektown Casino LLC*, No. 286845, 2009 WL 3051471, at *2 (Mich. Ct. App. Sept. 24, 2009) (denying officer defendant's motion for summary judgment when it "utterly fail[ed] to address the element of good faith").

In the context of intentional tort claims arising from an arrest—such as unlawful imprisonment—Michigan Courts equate an officer defendant's "good faith" to their "honest[] belie[f]" that probable cause supported the arrest, even if it did not. *Hunt v. Hunt*, No. 284485, 2009 WL 1228795, at *2 (Mich. Ct. App. May 5, 2009) On the other hand, even if probable cause supported the arrest, officer defendants will not be immune if their actions are capricious, corrupt, or maliciously motivated. *Id.* (citing *Odom*, 760 N.W.2d at 217); *see also Mendoza v. Robinson*, No. 346579, 2020 WL 1046622, at *5 (Mich. Ct. App. Mar. 3, 2020) ("[A]s long as the . . . officers[] can show that they had a good-faith and honest belief that they were acting properly in arresting plaintiff, they are entitled to the protections of governmental immunity regardless of whether they were, as asserted by plaintiff, ultimately incorrect in that belief.").

This Court has already held that the Officer Defendant's *belief* that probable cause existed—when it, in fact, did not—was unreasonable. *Little v. City of Saginaw*, No. 1:21-CV-11104, 2023 WL 3571916, at *6–7 (E.D. Mich. May 19, 2023) (noting "no reasonable juror could conclude that [the Officer] Defendants had reasonably trustworthy information sufficient to

believe that Plaintiff maliciously destroyed any property"). Based on the Officer Defendants own bodycam footage, no reasonable juror could conclude they honestly believed probable cause supported Plaintiff's arrest. *Cf. Chapman v. Mack*, No. 335678, 2018 WL 3038528, at *8 (Mich. Ct. App. June 19, 2018) (relying on dashcam video footage to decide good-faith immunity issue at summary judgment). Instead, this footage reveals that the Officer Defendants acted capriciously, not in good faith.

The Officer Defendant arrested Plaintiff *seven seconds* after warrantlessly entering his apartment without consent. LautnerCam 4 at 1:10–1:17. At the time of Plaintiff's arrest, the Officer Defendants had not compared his shoes to the prints allegedly outside, and had not compared his shoes to the pictures of the prints on their phones. *See id.* at 0:00–1:17, 4:19–24. Although Officer Lautner testified that he eventually compared Plaintiff's shoes to the tracks in the snow, he did so only *after* Plaintiff was handcuffed, arrested, placed in the squad car, and transported to the police station. *Compare* ECF No. 26-4 at PageID.254 *with* LautnerCam 4.

In sum, because the Officer Defendants arrested Plaintiff without probable cause, unreasonably in violation of the Fourth Amendment, they also imprisoned him unlawfully, in violation of Michigan tort law. And because the Officer Defendants acted capriciously and could not have honestly believed probable cause supported Plaintiff's arrest, they are not immune from liability.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 44, is **DENIED IN PART**, to the extent it seeks summary judgment on Plaintiff's Fourth Amendment unlaw seizure claim and Plaintiff's unlawful imprisonment claim.

Further, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 44, is **GRANTED IN PART**, to the extent it seeks summary judgment on Plaintiff's Fourth Amendment malicious prosecution claim and Plaintiff's intentional infliction of emotional distress claim.

Further, it is **ORDERED** that Plaintiff's Cross-Motion for Summary Judgment, ECF No. 48, is **GRANTED IN PART**, to the extent it seeks summary judgment on his Fourth Amendment unlaw seizure claim and his unlawful imprisonment claim.

Further, it is **ORDERED** that Plaintiff's Cross-Motion for Summary Judgment, ECF No. 48, is **DENIED IN PART**, to the extent it seeks summary judgment on his Fourth Amendment malicious prosecution claim and his intentional infliction of emotional distress claim.

The following table reflects the current posture of Plaintiff's claims, collectively resolved in both this Opinion and this Court's May 2023 Opinion, ECF No. 38, which remains pending on appeal. *See* ECF Nos. 40; 41; 43.

| Count | Claim | Defendants | Status |
|---|---|---|---|
| I | Fourth Amendment Unlawful Entry, 42 U.S.C. § 1983 | The Officer Defendants | Summary Judgment for Plaintiff (May 2023 Opinion) |
| I | Fourth Amendment Unlawful Seizure, 42 U.S.C. § 1983 | The Officer Defendants | Summary Judgment for Plaintiff |
| II | Fourth Amendment Unlawful Arrest, 42 U.S.C. § 1983 | The Officer Defendants | Summary Judgment for Plaintiff (May 2023 Opinion) |
| II | Fourth Amendment Malicious Prosecution 42 U.S.C. § 1983 | The Officer Defendants | Summary Judgment for Defendants |
| III | Unlawful Imprisonment, MICH. COMP. LAWS § 691.1401 *et seq.* | The Officer Defendants | Summary Judgement for Plaintiff |
| III | Assault and Battery, MICH. COMP. LAWS § 691.1401 *et seq.* | The Officer Defendants | Summary Judgment for Defendants (Waived by Plaintiff) |

| III | Intentional Infliction of Emotional Distress, MICH. COMP. LAWS § 691.1401 *et seq.* | The Officer Defendants | Summary Judgment for Defendants (Waived by Plaintiff) |
| IV | Fourth Amendment Deprivations, 42 U.S.C. § 1983 (*Monell*) | The City of Saginaw | Summary Judgment for Plaintiff (May 2023 Opinion) |

Further, it is **ORDERED** that the above-captioned case is **STAYED** pending the result of the Defendants' appeal, *Little v. City of Saginaw, et al*, CN 23-1535 (6th Cir. 2023), to the extent issues of remedies remain.

**This is a final order but does not close the above-captioned case.**

Dated: March 29, 2024                                      s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge